```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

UNITED STATES OF AMERICA, )
                          )
         Plaintiff,       )
                          )
      v.                  )   No. S1-4:07CR00184 ERW (AGF)
                          )
ANTHONY STILES, et al.,   )
                          )
         Defendants.      )

### GOVERNMENT'S RESPONSE TO DEFENDANTS JEFFERSON'S AND SPENCER MITCHELL'S MOTIONS TO SUPPRESS EVIDENCE

COMES NOW the United States of America, by and through its attorneys, Catherine L. Hanaway, United States Attorney for the Eastern District of Missouri, and Dean R. Hoag and James C. Delworth, Assistant United States Attorneys for said District, and responds to defendants Jefferson's and Spencer Mitchell's motions to suppress evidence as follows:

**I.    INCIDENT OF JUNE 13, 2006**

   **A.    FACTS**

On June 12, 2006, intercepted conversations between defendants Spencer Mitchell and Eric Earnest indicated they were involved in a 5 to 10 kilogram cocaine deal which was going to happen on June 13, 2006.

On June 13, 2006, members of the St. Louis DEA Task Force conducted surveillance on Sammy Jefferson, Eric Earnest and Spencer Mitchell. Pursuant to a Title III investigation, agents overheard conversations between Sammy Jefferson's cell phone (314) 920-2352

(target telephone #3) and Eric Earnest's cell phone (314) 565-8266 (target telephone #1).

Specific reference is directed to target telephone #1's call session numbers 8523, 8529, 8530, 8532, 8538, 8545, 8546, 8554, 8555, 8574, 8583, 8584, 8600, 8602, and 8603, and to target telephone #3's call session numbers 1598, 1603, 1604, and 1606, which detailed the following:

On June 13, 2006, at approximately 9:34 a.m., agents intercepted a push-to-talk conversation to PTT #140*134676*17 utilized by defendant Spencer Mitchell from defendant Eric Earnest. During the conversation they agreed to meet in an hour to consummate a drug deal. Ultimately, defendant Earnest was intercepted talking to defendant Sammy Jefferson and picking up Jefferson at his residence.

On June 13, 2006, at 10:36 a.m., defendant Earnest is heard telling defendant Spencer Mitchell to meet him (Earnest) at the St. Louis airport.

At 11:10 a.m., defendant Earnest is overheard instructing defendant Mitchell to meet them at Steak 'n Shake at I-1780 and Natural Bridge in St. Louis, Missouri. DEA agents surveilled defendants Earnest and Jefferson driving in a black four-door Mercury Marauder, and defendant Mitchell was driving a black Chevrolet Impala with temporary Illinois tags. Agents continued to surveil both vehicles as both rendezvoused on the Steak 'n Shake

parking lot, left the lot, proceeded to the Airport Diner and met at the Motel 6 parking lot on Woodson Road at 11:35 a.m. Defendant Jefferson was then observed walking around the motel parking lot and meeting with Mitchell and Earnest at 11:38 a.m. Agents observed Mitchell, Jefferson and Earnest walking over to the trunk of the Marauder and Earnest retrieving a suitcase and giving it to Mitchell, who then opened the trunk of the Impala and put the suitcase inside.

At 11:41 a.m. Mitchell was observed leaving the parking lot driving the Impala down I-70 toward downtown St. Louis. DEA agents then contacted the St. Louis Police Department's Mobile Reserve Unit and informed them that Mitchell car was traveling with a large quantity of cocaine and requested them to conduct a traffic stop of the vehicle.

Mobile Reserve officers observed Mitchell's vehicle traveling toward downtown St. Louis. As they got closer to the Impala, Mitchell swerved over two lanes of traffic and exited at Exit 250A, MLK Bridge. Unable to stop Mitchell on the bridge due to heavy traffic, Mitchell was finally stopped on Highway 64 East at Exit 5 in St. Clair County, Illinois, by the Mobile Reserve officers.

Mobile Reserve Officer Joyner informed Mitchell of his illegal lane change on Highway 70 and asked him if he was carrying anything illegal like weapons or drugs. After indicating "no," Mitchell then agreed a consensual search of the vehicle. The officers

recovered 10 kilograms of cocaine from a suitcase in the trunk of the Impala driven by Mitchell.  Mitchell was arrested by the Illinois State Police and was issued a traffic summons for Improper Lane Usage by Mobile Reserve Officer Joyner.

**B.    DISCUSSION**

Following electronic interceptions on June 12, 2006, agents determined that Sammy Jefferson, Eric Earnest and Spencer Mitchell were about to consummate a multi-kilogram quantity cocaine deal. During the surveillance on June 13, 2006, agents observed the three parties' (Jefferson, Earnest and Mitchell) rendevous in the airport area at Motel 6 on Woodson Road in the Eastern District of Missouri. Agents then observed Earnest hand a suitcase to Michell who placed it inside the Chevrolet Impala. After leaving the area, agents followed Mitchell down Highway 70 to downtown St. Louis. After observing Mitchell commit a traffic violation, Mobile Reserve officers followed Mitchell into Illinois and arrested the defendant on I-64 in St. Clair County, Illinois. Defendant Mitchell consented to the warrantless search of the Impala.

A search based upon consent may be undertaken by law enforcement officers without a warrant or probable cause and any evidence discovered during the scope of the search may be seized and admitted at trial. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). To determine the voluntariness of the consent, the courts will examine the totality of the circumstances surrounding the

consent. Bustamonte, 412 U.S. at 227. The consent does not necessarily have to be knowing and intelligent. Bustamonte, 412 U.S. at 241.

Any person with common authority over, or other sufficient relationship to the place or effects being searched can give valid consent. Illinois v. Rodriguez, 497 U.S. 177, 179 (1990); United States v. Matlock, 415 U.S. 164, 170 (1974). The relationship may be shown by hearsay. Matlock, 415 U.S. at 175. A warrantless search is valid when law enforcement officers rely on a person's apparent authority to consent to the search if the reliance is in good faith and reasonably based on all the facts known by the police at the time of the search. Rodriquez, 497 U.S. at 188-89. At the hearing into this matter, the government will present evidence which will show that the evidence was seized pursuant to a valid consent search, as well as proof on any other matter requiring evidence.

Even without the consent of Spencer Mitchell, the arresting officers had probable cause to arrest Mitchell for traffic violations as well as drug violations based on the electronic interceptions from June 12 and 13, 2006, and the surveillance team's observation of Mitchell, Jefferson and Earnest who were conducting a drug transaction in St. Louis County, Missouri. That probable cause justifies the warrantless search of Mitchell's vehicle as the following series of cases demonstrate.

In <u>United States v. Castaneda</u>, 438 F.3d 891 (8th Cir. 2006), the Court held that:

> Under the Fourth Amendment, the "general rule" is that "warrantless searches are presumptively unreasonable. <u>Horton v. California</u>, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); <u>see also</u> <u>United States v. Ross</u>, 456 U.S. 798, 824-25, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (reaffirming the "basic rule of Fourth Amendment jurisprudence" that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." (citations and internal quotations omitted)).
>
> One exception to the general rule is the so-called "automobile exception." <u>See</u> <u>generally</u> <u>Carroll v. United States</u>, 267 U.S. 132, 158-59, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (creating the automobile exception). "The warrantless search of a vehicle is constitutional pursuant to the 'automobile exception' to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." <u>United States v. Wells</u>, 347 F.3d 280, 287 (8th Cir. 2003).

<u>Id.</u> at 893.

In <u>United States v. Rivera</u>, 465 F.Supp.2d 89 (D. Puerto Rico 2006), the court held that:

> "the mobility of automobiles and the attendant need to prevent loss of evidence undergirds" an exception to the warrant requirement. <u>United States v. Lopez</u>, 380 F.3d 538, 543 (1st Cir. 2004). "A warrantless search of an automobile will be upheld if officers have probable cause to believe that the vehicle contains contraband." <u>Id.</u>, citing <u>United

> States v. Ross, 456 U.S. 798, 808, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

Id. at 107.

In United States v. Valle Cruz, 452 F.3d 698 (8th Cir. 2006), the Court held that:

> "Articulating precisely what ... 'probable cause' mean[s] is not possible." Ornelas, 517 U.S. at 695, 116 S.Ct. 1657. Probable cause (and reasonable suspicion) are "fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." Id. at 696, 116 S.Ct. 1657. Thus the probable-cause determination is made after looking at the totality of relevant circumstances and applying a "common sense approach." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). Ultimately, probable cause exists in a case such as this one when a reasonably prudent person would look at the facts and circumstances and believe "that contraband or evidence of a crime will be found" if a vehicle were to be searched. Ornelas, 517 U.S. at 696, 116 S.Ct. 1657.

Id. at 702-03.

In United States v. Coney, 456 F.3d 850 (8th Cir. 2006), the Court held that:

> An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. Brown, 345 F.3d at 578. "This is true even if a valid traffic stop is a pretext for other investigation." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002); see Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that an officer's subjective intentions for conducting a traffic stop "play no role in ordinary, probable-cause Fourth Amendment analysis"). As long as an officer "objectively has a reasonable basis for

7

> believing that the driver has breeched a traffic law," the officer has probable cause to conduct a traffic stop." United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996).

Id. at 855-56.

The wiretap conversations between Jefferson, Earnest and Mitchell combined with the exchange of suitcase between Earnest and Mitchell constitute sufficient probable cause for the arrest of all three individuals on drug conspiracy charges. Mitchell's subsequent traffic violations compounds that probable cause and justifies the warrantless search of his vehicle after his arrest. Defendants Mitchell's and Jefferson's motions to suppress should be denied.

## II.  SEIZURE INCIDENT OF SEPTEMBER 1, 2006

### A.  FACTS

Beginning in May 2006, DEA agents began monitoring conversations between a cell phone utilized by defendant Sammy Jefferson ((314) 920-2352 -- target telephone #3) and a cell phone utilized by defendant Eric Earnest ((314) 565-8266 -- target telephone #1) pursuant to court-authorized wire interceptions. During the course of this monitoring, agents heard defendant Jefferson refer to his possession of handguns beginning with call session #165 on May 10, 2006.

During call session #165, defendant Jefferson is conversing with defendant Earnest and describing his almost being stopped by police officers on the south side and told Earnest he tried to

8

throw his "thing" (gun) out of the passenger-side window but the window was closed and it came back in the car.

In call session #136 on June 8, 2006, Jefferson is talking to an unidentified male and tells him that he had to "throw his heat down by OG house." He told the unidentified male if the police were not down there, he was going to try and go get his "shit" (gun). And he finally tells the unidentified male "I'm going back and trying to find my mother f***in' pistol. I don't give a f*** who down there."

In call session #138 on the same day, Jefferson tells "KeyBo" (phonetic), the other caller, that he saw Mobile (Mobile Reserve) and "had to throw his mother f***ing pistol." In other references on this call, he reiterates throwing his "heat" (gun) out at least three times.

In call session #140 on June 8, 2006, Jefferson tells another caller that "KeyBo" just went and got that "mother f***ing .40 caliber pistol."

In call session #777 on June 10, 2006, Jefferson is conversing with another male who refers to four people in a two-tone Dodge Charger and Jefferson says "hold on, let me get my heat, alright."

In call session #1097 on June 11, 2006, Jefferson talks to an unknown male about getting "Birdie" a gun.

In call session #8246 on June 12, 2006, Jefferson converses with Eric Earnest and tells Earnest to "hand that pistol up under

9

the seat, I forgot all about it."  After Earnest is surprised, Jefferson tells him, "Yeah, I forgot.  You know that I keep that mother f***er, man."

In call session #1513 on June 12, 2006, Jefferson directs an unknown male to the bed by the window in his bedroom and the male states, "You must have an Uzi or a MAC 10 underneath the bed." Jefferson replies, "You already know.  Go on my side and look up underneath the bed...."

In call session #3207 on June 19, 2006, Jefferson engages in a conversation with an unknown male and talks about people saying he was snitching.  He then talks about slapping someone with a "burner" (gun), threatening the guy and the guy begging for his life.

In call session #4912 on June 26, 2006, Jefferson converses with an unknown male who he asks for "a couple of things" (guns) and said he had to get rid of his and it wasn't there when he went back.

In call session #5854 on June 30, 2006, Jefferson converses with Eric Earnest and tells him somebody was gonna get him "one" (gun) that he can take out with him because he needed one with him and he just lost his (gun).

In call session #5857 on June 30, 2006, Jefferson converses with an unknown male and asks for "some niner ball things" (9mm shells/ammunition) and the unknown male says "no" and asked

10

Jefferson "what happened?" Jefferson tells him he "ain't got nothing to put in it, just for flashing." The unknown male says he'll call Ramone.

In call session #5862 on June 30, 2006, Jefferson converses with another unknown male still asking for "niner ball shells" (9mm shells/ammunition) and the unknown male tells Jefferson he might know someone that does (have 9mm shells/ammunition).

In call session #7339 on July 11, 2006, Jefferson and an unknown male converse about Jefferson shooting out Jay-Mo's window and mirror. Jefferson admits to the shooting.

In call session #8288 on July 13, 2006, Jefferson and an unknown male are engaged in a general conversation when a call interrupts them and Jefferson hears about a problem down by the fairgrounds. Jefferson tells the unknown male to call Pistol cause Pistol's got his "shit" (gun) and he (Pistol) hasn't given it back (to Jefferson). Jefferson also tells the unknown male that he threw his other one (gun) on the highway when he was chased (by the police).

In call session #8304 on July 13, 2006, Jefferson converses with an unknown male about trouble in the park. Jefferson tells the unknown male to get his thing (gun) because "some shit's going down." Jefferson tells the unknown male to get it (the unknown male's gun) and he (Jefferson) has his (gun) right in the car.

In call session #9652 on July 16, 2006, Jefferson converses with an unknown male asking the male if he has Jefferson's heat (gun). The unknown male replies he does and Jefferson says he is coming out to get it.

In call session #9666 on July 16, 2006, Jefferson converses with an unknown male about guns. Jefferson has his gun and the unknown male has Jefferson's gun. Their conversation then relates to a shooting event in downtown St. Louis the night before and Jefferson tells the unknown male that someone removed a pistol hidden behind his back before security searched him.

From July 15, 2006, to on or about July 20, 2006, court-authorized Title III interceptions indicated that Jefferson and other individuals were coordinating an attempt at an act of revenge on an unidentified individual known as "Blue." During these interceptions, details indicated that Jefferson was attempting to obtain weapons to seek revenge for a shooting which occurred the previous weekend. During call session #11083 on July 20, 2006, Jefferson told an unknown male that "'Blue' was going to be down at Plush (a bar located at 1820 Market St., St. Louis, MO) tonight." Jefferson told the unknown male that they had a Mack gun (MAC 10), they shot about 40 times, they had "a MAC, it's a .45." Jefferson further stated "he had a MAC right now, but ain't got no clip to the mother f***er."

In call session #11156 on July 20, 2006, Jefferson instructed an unknown female to "come to the front of Union Station (1820 Market St., St. Louis, MO) in the front of the Union Station on Market." At 11:44 p.m., Jefferson was observed with other individuals in the fountain park area in front of Union Station.

Based on the information from the interceptions, law enforcement officials decided to saturate the area with the presence of more police officers and called out additional members of the St. Louis Metropolitan Police Department. In call session #11216 and #11226, Jefferson is overheard describing the overwhelming police presence in the area of Union Station. In call session #11241, Jefferson is overheard saying he was back at the hotel. At the same time, DEA Special Agent James Stroop observed Jefferson exit a black Mercury Marauder and enter the hotel at 800 Washington Avenue, St. Louis, Missouri.

In call session #15130 on August 14, 2006, Jefferson and an unknown male discuss a store on North 14th Street where they can get "the shit" (ammunition) from this place without an ID. Jefferson tells the unknown male to call when he gets inside and he'll give him the numbers to tell the man what he needs so he can get what he needs.

On August 30, 2006, St. Louis Metropolitan police officers and DEA agents applied for and received a search warrant for Sammy

Jefferson's residence at 4336 Margaret Ridge, Florissant, MO 63034, from United States Magistrate Judge Terry I. Adelman.

Based upon the defendant Jefferson's repeated references to weapons, retaliation and retribution on the Title III intercepts form Sammy Jefferson's phone, agents decided to arrest defendant Jefferson before someone was shot or killed. Checking the REGIS Information Center, agents discovered Sammy Jefferson had outstanding warrants. On September 1, 2006, armed with the search warrant and the active "Wanteds," agents located Sammy Jefferson's Ford F150 pickup truck in the Marriott Hotel parking lot. At 11:44 a.m., agents observed defendant Jefferson walking in the hotel lobby with an unidentified female.

Defendant Jefferson and the female approached the F150 and, prior to reaching the vehicle, defendant Jefferson used the remote control unit to unlock the Ford F150 pickup truck. Agents and officers arrested Jefferson on the charges contained in the warrants for arrest as Jefferson approached the truck and was within an arm's length of the driver's side door. Pursuant to the arrest, agents opened his vehicle and recovered a loaded Lorcin brand 9mm pistol, bearing serial number L064734, underneath the driver's seat of the Ford F150 pickup truck. Also recovered from the defendant was a cellular telephone bearing the number (314) 920-7079 (eventually referred to as target telephone #3 in the court-authorized Title III documents). The Ford F150 was

seized for forfeiture proceedings by DEA Special Agent James Stroop.

**B.    DISCUSSION**

The fact that, at the time of defendant's arrest, defendant Jefferson was within an arm's length of the truck's driver's side door and could easily have accessed the weapon located underneath the driver's seat is compelling.

In New York v. Belton, 453 U.S. 454 (1981), the Court held that "lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence."   Id. at 457 (quoting Chimel v. California, 395 U.S. 752, 763 (1969).

The agents' prior knowledge of defendant Jefferson's penchant for carrying weapons inside his vehicle, as well as good police safety procedure, justifies the warrantless search for a weapon within an arm's length of defendant Jefferson.

15

## III. SEARCH WARRANT ON SEPTEMBER 1, 2006, AT 4336 MARGARET RIDGE, FLORISSANT, MO 63034

### A. FACTS

On August 30, 2006, officers of the St. Louis Metropolitan Police Department and agents of the Drug Enforcement Administration made an application for a search warrant for the residence of Sammy Jefferson located at 4336 Margaret Ridge, Florissant, Missouri 63034, to United States Magistrate Judge Terry I. Adelman. Judge Adelman signed the warrant on August 30, 2006.  Following the arrest of Sammy Jefferson for a weapons violation on September 1, 2006, agents/officers executed the search warrant at Jefferson's residence at approximately 12:30 p.m. on September 1, 2006.

Entry was made into the residence without force and agents executed the warrant without incident.  No one was inside the residence when the warrant was executed and agents seized the following:

    1.   miscellaneous documents from the kitchen area; and

    2.   miscellaneous documents from the master bedroom area.

A copy of the search warrant and affidavit are attached.  The government contends that the search warrant and affidavit provide sufficient probable cause to make the items seized admissible in trial.

B. **<u>DISCUSSION</u>**

The Fourth Amendment requires that a neutral and detached magistrate make a determination whether law-enforcement officers have probable cause to conduct a search. <u>Warden v. Hayden</u>, 387 U.S. 294, 301-02 (1967). Probable cause is the level of suspicion required to justify certain governmental intrusions upon interests protected by the Fourth Amendment. <u>Wong Sun v. United States</u>, 371 U.S. 471, 479 (1963). The determination of probable cause is made by a "totality of the circumstances" review. <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). In the context of a search, probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id</u>. The reviewing magistrate is to consider the facts in a practical common sense manner. The evidence must provide the magistrate with a "substantial basis" for his findings. <u>Gates</u>, 462 U.S. at 238-39.

At the hearing into this matter, the government will present evidence which will show that the evidence was seized pursuant to a valid search warrant, as well as proof on any other matter requiring evidence.

                              Respectfully submitted,

                              CATHERINE L. HANAWAY
                              United States Attorney

                               <u>s/ Dean R. Hoag</u>
                              DEAN R. HOAG, #6426
                              Assistant United States Attorney
                              111 South 10th Street, Room 20.333
                              St. Louis, MO 63102
                              (314) 539-6895

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 23, 2007, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

        All Attorneys of Record
        (Attorneys for defendants)


                                          s/ Dean R. Hoag
                                          DEAN R. HOAG, #6426
                                          Assistant United States Attorney